**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| IN RE: S.O. EXPRESS MOVING INTERNATIONAL, INC. <br> DEBTOR(S) | CHAPTER 7 <br><br> CASE NO. 24-10440- CJP <br> Honorable Judge Christopher J. Panos |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**PURSUANT TO 11 U.S.C SECTION 362 (d)(1) OR, IN THE ALTERNATIVE,**
**ADEQUATE PROTECTION**

JPMorgan Chase Bank, N.A. ("Chase") as and for a motion, pursuant to 11 U.S.C. §362(d) and Rule 4001(a) F.R.B.P., seeking an Order granting relief from Automatic Stay in order to obtain possession and dispose of its property, namely one 2021 Land Rover Discovery having VIN SALRT2RX6M2449356, or, in the alternative, directing the debtor to immediately provide Chase with adequate protection of its interest in the aforesaid vehicle, states the following as grounds therefore:

1.  On March 7, 2024, S.O. Express Moving International, Inc. (hereinafter referred to as the "Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the Code with this Court.

2.  This Court has jurisdiction over this matter under 28 U.S.C. §§1334(b) and §157(a) and §362(d) of Title 11, United States Code (hereinafter referred to as the "Code"). Upon information and belief, this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).

3.  Chase is the lien holder of one (1) 2021 Land Rover Discovery, Vehicle Identification Number SALRT2RX6M2449356 (hereinafter "vehicle"). A true and correct copy of the Massachusetts Department of Transportation Certificate of Title, showing that Chase has perfected its lien on the Vehicle, is attached as Exhibit A.

4.  On May 19, 2021, Land Rover Peabody (hereinafter "lessor"), as Dealer and S.O. Express Moving International, Inc. ("Debtor") Sergio S De Oliveira ("CEO-signor"), collectively as lessors, entered into a Closed-End Motor Vehicle Lease Agreement (hereinafter "Lease Agreement") for said vehicle at the rate of $908.78 lease payments per

month for a term of thirty-six (36) months, commencing May 19, 2021. A copy of the Lease Agreement is attached as Exhibit B. The lease matured on May 19, 2024.

5. Pursuant to the terms and provision thereof, and for good and valuable consideration, the Lease Agreement was duly assigned by the dealer to Chase, which is now the holder and owner of same.

6. At the present time the Debtor is in default under the terms and provisions of the Lease Agreement as follows:

    a. The lease matured on May 19, 2024.

    b. The net payoff amount owing to Chase as of July 31, 2024 is $43,301.78.

    c. Pre-petition arrears: N/A.

    d. Lease Agreement arrears: Debtor has failed to make monthly payments and remains due and owing for March 19, 2024 through and including July 19, 2024 and, as a result, are in arrears $7,292.43, as of July 31, 2024. The arrears includes late charges of $50.00 and miscellaneous charges of $2,698.53.

7. The J.D. Power/NADA valuation, dated July 31, 2024, provides that the Clean Retail adjusted value of the Vehicle is approximately $35,225.00 A copy of the J.D. Power/NADA valuation is attached as Exhibit C.

8. The Debtor has not filed a Statement of Intention.

9. Upon information and belief, the debtor is in possession of the property subjecting same to normal occupational wear and tear thereby causing the property to depreciate in value. It is respectfully submitted that the continued use of the vehicle without payment to Chase pursuant to the terms and provisions of the Lease Agreement, shall eventually render the vehicle valueless, causing Chase irreparable damage to its interest in same.

10. It is respectfully asserted that Chase's interest in the vehicle will not be adequately protected if the automatic stay is allowed to remain in effect.

11. Accordingly, sufficient cause exists to grant Chase relief from the automatic stay herein, which includes, but is not limited to, the following:

    a. The Debtor has not filed a Statement of Intention;

  b. The lease matured May 19, 2024.

  c. The debtor is in default under the terms and provisions of the Lease Agreement by, among other things, failing to make the monthly payments due thereunder; and

  d. The ownership interest of Chase with respect to the vehicle is not adequately protected as envision under 11 U.S.C. §365; and

  e. The vehicle is not necessary for an effective reorganization of a bankruptcy estate; and

  f. The vehicle, by its intrinsic nature, is mobile, thereby subject to the foreseeable possibility of injury thereto by way of accident of collision.

12. It is respectfully submitted that Chase is in a more advantageous position to obtain an obtain an optimum price for sale of the vehicle, thereby increasing the possibility of avoid a deficiency balance on this account, and removing such creditor as potential unsecured claimant in this case.

13. Alternatively, in the event relief from automatic stay is not granted, then Chase respectfully requests that the Court compel the debtor to immediately provide adequate protection to such creditor by, among other things:

  (a) curing any default of payment obligations arising pursuant to the terms and conditions of the Lease Agreement;

  (b) continuing to make payment in timely fashion thereunder;

  (c) maintaining adequate and continuous insurance coverage on the vehicle;

  (d) provide Chase with adequate assurance of future performance; and

  (e) such other and further adequate protection as to the Court may seem just and proper.

14. In the event this request for adequate protection is granted, then Chase respectfully requests that it be entitled to the immediate possession of the property without further Court proceedings in the event of default by the debtor under any provisions for adequate protection which may be awarded herein.

15.     No prior application for the relief requested herein has been made.

**WHEREFORE,** Chase respectfully requests that the Court issue an Order, pursuant to 11 U.S.C. §362(d)(1), (a) granting Chase relief from automatic stay in order to obtain possession and dispose of its property, or, in the alternative, (b) directing the debtor to immediately provide for the adequate protection of the ownership interests of Chase as hereinabove requested and (c) that this Court finds that Bankruptcy Rule 4001 (a)(3) is not applicable so that this Chase may immediately enforce its rights against the motor vehicle; and for such other as further relief as the Court may deem just and proper.

Dated at Hartford, Connecticut on 09/11/2024.

MOVANT
JPMorgan Chase Bank, N.A.

By */s/Linda St. Pierre*
Linda St. Pierre, Esq.
McCalla Raymer Leibert Pierce, LLC
280 Trumbull St. 23FL,
Hartford , CT   06103
Phone: (860) 808-0606

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS BOSTON DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| S.O. EXPRESS MOVING | CASE NO. 24-10440- CJP |
|    INTERNATIONAL, INC. | Honorable  Judge Christopher J. Panos |
| DEBTOR(S) | |

**ORDER GRANTING RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, ADEQUATE PROTECTION**

After notice and an opportunity for a hearing on JPMorgan Chase Bank, N.A.'s (hereafter the "Movant") Motion for Relief from Stay or, in the alternative, adequate protection.

**IT IS HEREBY ORDERED** that the Automatic Stay of Section 362 Bankruptcy Code is modified so that the Movant may exercise its rights if any, under its Lease Agreement with the above Debtor with regard to a 2021 Land Rover Discovery having VIN SALRT2RX6M2449356, in accordance with State and Federal Law.

This Order is binding and effective despite any conversion of this bankruptcy case under any other chapter of the Bankruptcy Code.

Dated at Boston, Massachusetts this _____day of _____, 2024.

_____
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS BOSTON DIVISION

| | |
|---|---|
| IN RE:<br>S.O. EXPRESS MOVING INTERNATIONAL, INC.<br>DEBTOR(S) | CHAPTER 7<br>CASE NO. 24-10440- CJP<br>Honorable Judge Christopher J. Panos |

## CERTIFICATE OF SERVICE

The undersigned JPMorgan Chase Bank, N.A. (the "Movant") hereby certifies that on 09/11/2024 in accordance with Rules 7004, 7005, and 9014 F.R.Bankr.P., I have served the following upon all parties entitled to by first class mail postage prepaid or electronically:

1. **Documents Served**

   (1) a copy of the Motion for Relief from Automatic Stay,
   (2) a copy of the proposed order.

2. **Parties Served:**

   S.O. Express Moving International, Inc.
   6 Victoria St., Ste 101
   Everett, MA 02149
   *(Debtor)*

   | | | |
   |---|---|---|
   | Sergio S De Oliveira<br>330 Paradise Road<br>UNIT 1423<br>Swampscott, MA 01907<br>*(CEO – signor)* | Sergio S De Oliveira<br>330 Paradise Road<br>UNIT 1318<br>Swampscott, MA 01907<br>*(CEO – signor)* | Sergio S De Oliveira<br>5 Elmwood Rd<br>Swampscott, MA, 01907<br>*(CEO – signor)* |

   Harold B. Murphy
   Murphy & King, P.C.
   28 State Street
   Ste 3101
   Boston, MA 02109
   mxc@hanify.com
   *(Trustee)*

Richard King
Richard King - B
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109
USTPRegion01.BO.ECF@USDOJ.GOV
*(Assistant U.S. Trustee)*

William Parks
Law Offices of William C. Parks
100 State St
Ste 900
Boston, MA 02109
will@wparkslaw.com
*(Debtor's Attorney)*

Ford Motor Credit Company LLC
c/o Michael Lushan
Michael Lushan
132 Adams Street
Suite 8
Newton, MA 02458

Michael Saperstein
Paul E. Saperstein Co., Inc.
144 Centre Street
Holbrook, MA 02343

Craig Jalbert
Verdolino & Lowey, P.C.
124 Washington Street
Foxboro, MA 02035

Dated: 09/11/2024

    MOVANT
    JPMorgan Chase Bank, N.A.

    By */s/Linda St. Pierre*
    Linda St. Pierre, Esq.
    McCalla Raymer Leibert Pierce, LLC
    280 Trumbull St. 23FL,
    Hartford, CT  06103
    Phone: (860) 808-0606
    Federal Bar No.:
    Massachusetts

## UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

IN RE:  
S.O. EXPRESS MOVING  
INTERNATIONAL, INC.  
DEBTOR(S)

CHAPTER 7  
CASE NO. 24-10440- CJP  
Honorable Judge Christopher J. Panos

### PRE-FILING CONFERENCE CERTIFICATE

Undersigned counsel hereby attests to the following:

1. On 09/09/2024, in accordance with Massachusetts Local Bankruptcy Rule 13-16-1(a)(3) the undersigned e-mailed counsel for the Debtor, **William Parks**, to schedule a Pre-Filing conference to discuss the 2021 Land Rover Discovery having VIN SALRT2RX6M2449356which is the subject of the Motion for Relief from Stay simultaneously herewith.

2. Counsel for the Debtor stated that there is no objection to the filling of the Motion for Relief from Stay nor entry of an Order granting same and Debtor is consenting to turnover of the Vehicle.

Dated at Hartford, Connecticut on 09/11/2024.

MOVANT  
JPMorgan Chase Bank, N.A.

By */s/Linda St. Pierre*  
Linda St. Pierre, Esq.  
McCalla Raymer Leibert Pierce, LLC  
280 Trumbull St. 23FL,  
Hartford, CT 06103  
Phone: (860) 808-0606

# EXHIBIT A

# CERTIFICATE OF TITLE

## MASSACHUSETTS DEPARTMENT OF TRANSPORTATION

| TITLE NUMBER | VEHICLE IDENTIFICATION NUMBER | DATE OF ISSUE |
|---|---|---|
| [redacted] | SALRT2RX6M2449356<br>SALRT2RX6M2449356 | 06/02/2021 |

| MFRS MODEL YEAR | MAKE | MODEL NAME | MODEL NO | BODY STYLE/TYPE | NEW/USED |
|---|---|---|---|---|---|
| 2021 | LNDR | DISCOVERY | | UTIL | NEW |

| CYL | PASS | DRS | PURCHASE DATE | ODOMETER READING | PREV TITLE NO | PREV TITLE STATE |
|---|---|---|---|---|---|---|
| 04 | 07 | 4 | 05/18/2021 | 53 / 53 Actual | | |

IF PREVIOUS STATE WAS TITLE EXEMPT, REGISTRATION NUMBER IS DISPLAYED

**MAILING ADDRESS ONLY**
JPMORGAN CHASE BANK NA
PO BOX 901098
FORT WORTH TX 76101

### TITLE TYPE AND BRANDS

TITLE TYPE

BRAND
BRAND
BRAND
BRAND

TITLE MESSAGE(S):

**OWNER(S) NAME AND ADDRESS:**
JP MORGAN CHASE BANK NA
BX 901098
FT WORTH TX 76101

**FIRST LIENHOLDER.**
JPMORGAN CHASE BANK NA
PO BOX 901098
FORT WORTH TX 76101

**SECOND LIENHOLDER**

| RELEASE OF FIRST LIEN | RELEASE OF SECOND LIEN |
|---|---|
| THE FIRST LIENHOLDER'S INTEREST IN THE VEHICLE DESCRIBED IN THIS CERTIFICATE IS HEREBY RELEASED | THE SECOND LIENHOLDER'S INTEREST IN THE VEHICLE DESCRIBED IN THIS CERTIFICATE IS HEREBY RELEASED |
| NAME | NAME |
| AUTHORIZED SIGNATURE<br>X | AUTHORIZED SIGNATURE<br>X |
| DATE RELEASED | DATE RELEASED |

THE REGISTRAR OF MOTOR VEHICLES HEREBY CERTIFIES THAT AN APPLICATION FOR A CERTIFICATE OF TITLE FOR THE MOTOR VEHICLE DESCRIBED HEREIN HAS BEEN DULY FILED, PURSUANT TO THE PROVISIONS OF THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS. BASED ON THE STATEMENTS OF THE APPLICANT AND THE RECORDS ON FILE WITH THIS AGENCY, THE APPLICANT NAMED IS THE OWNER OF SAID VEHICLE

THE REGISTRAR OF MOTOR VEHICLES FURTHER CERTIFIES THAT THE VEHICLE IS SUBJECT TO ANY SECURITY INTERESTS SHOWN HEREIN

*Jamey Tesler*

**Jamey Tesler**
Registrar

CONTROL NO [redacted]
NOT THE TITLE NUMBER

VERIFY PRESENCE OF WATERMARK — HOLD TO LIGHT TO VIEW

**ALTERATION OR ERASURE VOIDS THIS TITLE.**   **KEEP IN SAFE PLACE**

**REGISTRY OF MOTOR VEHICLES**

# EXHIBIT B

## CLOSED-END MOTOR VEHICLE LEASE AGREEMENT
### Consumer Paper
[x] **Monthly Payment Lease**    [ ] **Single Payment Lease**

### 1. PARTIES:
Lease Date: 05/19/2021

| Lessor - Dealer Name | Address |
|---|---|
| LAND ROVER PEABODY | 247 NEWBURY ST, PEABODY, MA 01960 |
| Lessee - Name | Address |
| S.O. EXPRESS MOVING INTERNATIONAL, INC. | 6 VICTORIA ST SUITE 101, EVERETT, MA, MIDDLESEX 02149 |
| Lessee - Name | Address |
| SERGIO S DE OLIVEIRA | 5 ELMWOOD RD, SWAMPSCOTT, MA, ESSEX 01907 |

Each Lessee signing this Lease ("**you**" or "**your**") agrees to lease from the Lessor named above the vehicle described in Section 2 (the "**Vehicle**") on the terms and conditions in this Lease Agreement ("**Lease**"). Lessor intends to assign its rights and interest under this Lease to JPMorgan Chase Bank, N. A. ("**Chase**"). As used in this Lease, the terms "**us**," "**our**" and "**we**" refer to the Lessor and, after assignment, to Chase or its successors and assigns.

### 2. DESCRIPTION OF LEASED VEHICLE:

| MODEL YEAR | MAKE | MODEL | BODY STYLE | COLOR | VEHICLE ID NO. | ODOMETER |
|---|---|---|---|---|---|---|
| 2021 | LAND ROVER | DISCOVERY | P300 S R-DYNAMIC | N/A | SALRT2RX6M2449356 | 53 |

[ ] If checked, the primary use of the Vehicle is business or commercial; otherwise, it is personal, family or household use.

### 3. LEASE TERM.
The Lease Term is __36__ months, beginning on the Lease Date (above) and ending on __05/19/2024__ (the "**Maturity Date**").

### 4. DESCRIPTION OF TRADE-IN (if applicable)

| MODEL YEAR | MAKE | MODEL | GROSS ALLOWANCE | AMOUNT OWED | NET TRADE-IN |
|---|---|---|---|---|---|
| N/A | N/A | N/A | $ N/A | $ N/A | $ 0.00 |

An "e" in this Lease indicates an estimate.

### Federal Consumer Leasing Act Disclosures

**5. Amount Due at Lease Signing or Delivery:** (Itemized below)*
$ 5,389.00

**6. Lease Payments:**
(a) **Monthly Payment Lease:** Your first Monthly Payment of $ 908.78 is due on 05/19/2021, followed by 35 payments of $ 908.78 due each following month. The total of your Monthly Payments is $ 32,716.08
(b) **Single Payment Lease:** Your Advance Single Payment of $ N/A is due on N/A.

**7. Other Charges** (not part of your Monthly Payment):
**Turn-In Fee** (if you do not purchase the Vehicle from us): $ 495.00
**Total:** $ 495.00

**8. Total of Payments** (The amount you will have paid by the end of the Lease):
$ 37,691.30

#### *Itemization of Amount Due at Lease Signing or Delivery

**9. Amount Due at Lease Signing or Delivery:**
(a) Capitalized Cost Reduction ... $ 2,616.08
(b) First Monthly Payment ... + $ 908.78
(c) Advance Single Payment ... + $ N/A
(d) Refundable security deposit ... + $ N/A
(e) Initial title fees ... + $ N/A
(f) Initial registration fees ... + $ 117.50
(g) Sales or use tax ... + $ N/A
(h) Acquisition Fee ... + $ 895.00
(i) Dealer document processing fee ... + $ 595.00
(j) Prior credit or lease balance ... + $ N/A
(k) CAPITALIZED COST REDUCTION TAX + $ 163.51
(l) OTHER TAXES + $ 93.13
(m) N/A + $ N/A
(n) N/A + $ N/A
(o) N/A + $ N/A
(p) N/A + $ N/A
(q) N/A + $ N/A
(r) N/A + $ N/A
(s) N/A + $ N/A
(t) N/A + $ N/A
(u) N/A + $ N/A
(v) Total ... = $ 5,389.00

**10. How the Amount Due at Lease Signing or Delivery will be paid:**
(a) Net trade-in allowance ... $ 0.00
(b) Amount to be paid in cash ... + $ 5,389.00
(c) Rebates and noncash credits:
 (1) Manufacturer Rebate(s) ... + $ N/A
 (2) N/A + $ N/A
 (3) N/A + $ N/A
 (4) N/A + $ N/A
(d) Total ... = $ 5,389.00

Lessee Initials Here __SD__  Co-Lessee Initials Here __SD__

**FORM NO. CAFL-MASTER-LZR/E (REV. 6/19)**   Page 1 of 6   © 2019 JPMorgan Chase Bank, N.A. Member FDIC

This is not the Authoritative Copy.

[watermark: Customer Copy]

**11. Your Lease payment is determined as shown below.**

(a) **Gross capitalized cost.** The agreed upon value of the Vehicle ($ 63,610.69 ) and any items you pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) **(See Section 16 below for an itemization of this amount)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 65,405.69

(b) **Capitalized cost reduction.** The amount of any rebate, net trade-in allowance, noncash credit or cash you pay that reduces the gross capitalized cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − $ 2,616.08

(c) **Adjusted capitalized cost.** The amount used in calculating your base Monthly Payment. . . . . . . . . . . . . . . . . . . . . . . . = $ 62,789.61

(d) **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base Monthly Payment. . . . . . . . . . − $ 37,922.25

(e) **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 24,867.36

(f) **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. . . . . . . . . . . . . . . . . . . . . . + $ 5,924.16

(g) **Total of base Monthly Payments.** The depreciation and any amortized amounts plus the rent charge. . . . . . . . . . . . . . . . . = $ 30,791.52

(h) **Lease Payments.** The number of payments in your Lease. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ÷ 36

(i) **Base Lease Payment (Monthly or Advance Single, as applicable)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 855.32

(j) **Sales/use tax.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ 53.46

(k) **Other:** N/A . . . . . . . . . . + $ N/A

(l) **Total Lease Payment (Monthly or Advance Single, as applicable)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 908.78

Lease terms are negotiable with the Lessor. The Lessor intends to assign this Lease Agreement and may retain a portion of the Total Lease Payments.

**12. Early Termination.** You may have to pay a substantial charge if you end this Lease early. <u>The charge may be up to several thousand dollars.</u> <u>The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.</u>

**13. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use, and for mileage in excess of 10,000 miles per year during the scheduled Lease Term at the rate of 30 cents per mile.

**14. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ 37,922.25 and a purchase option fee of $ 150.00 , for a total of $ 38,072.25 . The purchase option fee does not include fees for tags, taxes or registration.

**15. Other Important Terms.** See the remainder of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, excess wear standards and any security interest, if applicable.

**16. ITEMIZATION OF GROSS CAPITALIZED COST.**

(a) Agreed upon value of the Vehicle . . . . . . . . . . . $ 63,610.69
(b) Sales/use tax . . . . . . . . . . . . . . . . . . . . . . . . + $ N/A
(c) Initial title, license and registration fees . . . . . . . + $ N/A
(d) Acquisition Fee . . . . . . . . . . . . . . . . . . . . . . . + $ N/A
(e) Prior credit or lease balance . . . . . . . . . . . . . . + $ N/A
(f) Dealer document processing fee . . . . . . . . . . . + $ N/A
(g) INT/EXT PROTECT AND ACCES + $ 1,795.00
(h) N/A + $ N/A
(i) N/A + $ N/A
(j) N/A + $ N/A
(k) N/A + $ N/A
(l) N/A + $ N/A
(m) N/A + $ N/A
(n) N/A + $ N/A
(o) N/A + $ N/A
(p) N/A + $ N/A
(q) N/A + $ N/A
(r) Gross Capitalized Cost . . . . . . . . . . . . . . . . . . = $ 65,405.69

**17. OFFICIAL FEES AND TAXES.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included with your Monthly Payments (or Advance Single Payment, as applicable) or assessed otherwise is:
$ 2,440.57 e.
**This amount is an estimate. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle when a fee or tax is assessed.**◆

**18. WARRANTIES.** The Vehicle is subject to the manufacturer's standard new car warranty. The Vehicle is also subject to any other express warranties or guarantees disclosed here:
N/A .
There are no warranties, guarantees or other rights provided to you by us or the Vehicle's manufacturer other than those disclosed in this Lease.
WE DISCLAIM ALL IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT WHERE PROHIBITED BY LAW.

**19. INSURANCE VERIFICATION.** The insurance required by Section 28 of this Lease is in force on the Lease Date as follows:

Insurance Co.: MAPFRE INSURANCE
Policy No.: N/A
Agent's Name: COLE INSURANCE
Agent's Address: 26 BRANDE CT, READING, MA 01867
Phone Number: ███

◆ A SERVICE AND HANDLING FEE IS NOT AN OFFICIAL FEE. A SERVICE AND HANDLING FEE IS NOT REQUIRED BY LAW BUT MAY BE CHARGED TO THE CUSTOMER FOR PERFORMING SERVICES AND HANDLING DOCUMENTS RELATING TO THE CLOSING OF A SALE OR LEASE. THE SERVICE AND HANDLING FEE MAY RESULT IN PROFIT TO THE DEALER. THE SERVICE AND HANDLING FEE DOES NOT INCLUDE PAYMENT FOR THE PREPARATION OF LEGAL DOCUMENTS. THIS NOTICE IS REQUIRED BY LAW.

Lessee Initials Here _____ Co-Lessee Initials Here _____

**FORM NO. CAFL-MASTER-LZR/E (REV. 6/19)** Page 2 of 6 © 2019 JPMorgan Chase Bank, N.A. Member FDIC

**20. OPTIONAL INSURANCE AND OTHER PRODUCTS.** You are not required to buy any of the optional insurance products or other products listed below. You should carefully review the contracts that describe the details of any optional insurance products or other products you choose to buy. By signing this Lease, you have elected to purchase from the Lessor the following optional insurance products and other products:

| Type | Provider Name | Coverage Term/Coverage Amount | | Premium/Charge* |
|---|---|---|---|---|
| ☐ Service Contract | N/A | N/A miles/ | N/A months | $ N/A |
| ☐ Prepaid Maintenance Plan | N/A | N/A miles/ | N/A months | $ N/A |
| ☐ Tire & Wheel Protection | N/A | N/A miles/ | N/A months | $ N/A |
| INT/EXT PROTECT AND ACCES | PROTECTALL PAINT/FAB | N/A miles/ | 36 months | $ 1,795.00 |
| N/A | N/A | N/A miles/ | N/A months | $ N/A |
| N/A | N/A | N/A miles/ | N/A months | $ N/A |

**You have purchased the optional products listed above for a total charge of:** $ 1,795.00

* The Dealer may retain a portion of the premiums or other charges for the optional insurance products and other products listed above.

**21. HOW THIS LEASE MAY BE CHANGED.** This Lease contains the entire agreement for the Lease of the Vehicle. We may, in our sole discretion, agree orally to requests for extensions, deferrals, or due date changes, and confirm them electronically or in writing. We may, at our option, change any provision in this Lease by giving you at least 10 days' advance written or electronic notice of the proposed change, provided that the change is at least as favorable to you as the existing provision. No other changes to this Lease are effective unless they are in a written or electronic agreement signed by you and us.

Lessee's Signature: _[signature]_   Lessee's Signature: _[signature]_

**LESSEE(S) NOTICES AND SIGNATURES**

BY SIGNING THIS LEASE, YOU ACKNOWLEDGE THAT THIS LEASE CONTAINS AN "ARBITRATION PROVISION" HEREIN, THAT YOU HAVE READ THE AGREEMENT TO ARBITRATE DISPUTES AND AGREE TO ITS TERMS.

Total Loss Early Termination Payoff Balance Notice: If there is a total loss, destruction or theft of the Vehicle, the early termination payoff balance (Adjusted Lease Balance) of the Vehicle as determined under Section 30 of this Lease may be different than the actual cash value of the Vehicle as determined by your insurer of the Vehicle. Section 31 provides that you will not be obligated to pay us this amount, unless, as of the date of such total loss, you do not have in effect a physical damage insurance policy as required by Section 28. By signing this Lease, you acknowledge that you have read this notice and understand its content.
Michigan: Lessee must initial indicating you have read this notice and understand its content.

Lessee's Initial: _____   Lessee's Initial: _____

NOTICE TO LESSEE(S): BY SIGNING THIS LEASE BELOW YOU ACKNOWLEDGE THAT: (1) EACH LESSEE ACCEPTS AND IS SEPARATELY LIABLE UNDER THE TERMS AND CONDITIONS OF THIS LEASE; AND (2) YOU HAVE READ ALL PAGES OF THIS LEASE (INCLUDING TERMS APPEARING AFTER YOUR SIGNATURE, ON ADDITIONAL PAGES OF THIS LEASE), UNDERSTAND ALL OF ITS TERMS, AND WERE PRESENTED A COMPLETELY FILLED IN COPY BEFORE SIGNING BELOW. BEFORE SIGNING, YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THE LEASE YOU MAY KEEP. YOU ARE ALSO ENTITLED TO A COPY OF YOUR SIGNED LEASE.

Lessee(s) agree to all terms and conditions in this Lease.

X _[signature]_  CEO   X _[signature]_  N/A
Lessee Signs  Title (if a business)   Lessee Signs  Title (if a business)

**LESSOR'S SIGNATURE AND ASSIGNMENT**

By signing below, Lessor: (1) accepts all terms and conditions of this Lease; and then (2) assigns all of its rights under this Lease, as well as all title and interest in and to the Vehicle, to JPMorgan Chase Bank, N.A. ("Chase"), subject to the applicable dealer agreement between the Lessor and Chase; and (3) warrants to Chase that the insurance set forth in Section 19 is in place and complies with the requirements of this Lease.

X _[signature]_   Title: Finance   Date: 05/19/2021
Lessor-Dealer Signs

This is not the Authoritative Copy.    Customer Copy

# VEHICLE MAINTENANCE, USE AND INSURANCE

**22. PAYMENTS.** You will pay all Monthly Payments and other amounts owed under this Lease when due and as we direct. Your first Monthly Payment is due on the Lease Date. All subsequent Monthly Payments are due on the same day of each following month, except that if the Lease Date falls on the 29th, 30th or 31st day of the month, all subsequent Monthly Payments are due on the first day of each month beginning in the second month following the Lease Date. If your payment schedule above reflects that subsequent Monthly Payments are due on the 29th, 30th or 31st day of the month, then this Section controls rather than the payment schedule. If we collect sales/use tax on your Monthly Payments and you move, the amount of your Monthly Payment will change if the tax changes.

**23. LATE PAYMENTS AND RETURNED ITEMS.** You will pay us a late fee of the lesser of **$25 or 5%** of the unpaid amount of any Monthly Payment not received by us within **10 days** (**15 days** in Maine) after its due date (except if the Lease is entered into in: Iowa - No late fee; Colorado - $15; Wyoming and Maine – Lesser of $10 or 5% of the unpaid amount of any payment). This fee will be due upon demand. If any check, draft, electronic payment or other payment we receive is returned unpaid or declined for any reason, then you will not be required to pay us a returned item fee.

**24. MAINTENANCE AND OPERATING COSTS.** You will maintain, service and repair the Vehicle as recommended in the owner's manual and as needed to keep the Vehicle in good operating condition and free of physical damage. Replacement parts must be original equipment manufacturer parts or parts of equal quality or design. You will have any defects timely repaired according to any manufacturer's safety recall notices. You will pay all operating expenses for the Vehicle, including the cost of oil, gas, lubrication, parts, labor, storage, parking, towing, tolls and all other costs associated with operating the Vehicle. You will maintain records of all repairs and maintenance. If the odometer stops working, you must fix it immediately. You will not modify the Vehicle (such as adding, removing or modifying any accessories, equipment, parts, painting or lettering) without our prior written permission. Any accessories, equipment or parts installed in or on the Vehicle become our property and part of the Vehicle regardless of whether we gave you our written permission. You will make the Vehicle available to us for inspection upon our reasonable request. Any inspection we perform will be solely to protect our interests in the Vehicle or to determine your liability under this Lease and is not a representation or warranty to you about the Vehicle's condition or safety.

**25. TITLE, REGISTRATION AND OFFICIAL FEES AND TAXES.** You will keep the Vehicle's registration and licensing current with the appropriate governmental office. Legal title to the Vehicle will be in our name and the Vehicle will be titled as we direct. You will pay when due all government taxes and fees (other than our income taxes) in connection with this Lease, including its termination, and the Vehicle, whether assessed on you, us or the Vehicle. Your responsibility includes, but is not limited to, any personal property taxes and fees for title, registration and licensing. You are responsible for government taxes and fees that are assessed or imposed for any period that begins before you purchase or return the Vehicle to us, even if those fees or taxes are billed or due afterwards. At termination of this Lease, you will pay, at our option, an amount we estimate for such government taxes and fees that are not yet billed. If the actual taxes or fees are less than our estimate, we will refund you the difference; if they are more, you will pay us the difference. We are not required to apply on your behalf for any exemptions or refunds of government taxes or fees. If we receive a bill for government fees and taxes, we may forward it to you for payment or we may pay it and you will reimburse us upon our demand. Texas Lessee waives any timing requirement regarding personal property tax assessment notices relating to the Vehicle in the event that applicable law requires such notice from Lessor to Lessee.

**26. USE OF THE VEHICLE.** You will not use the Vehicle or allow anyone else to use it (a) unlawfully or for any illegal or wrongful purpose; (b) to transport goods or persons for hire; (c) without a valid driver license and insurance; or (d) in any manner that would not be covered by your required insurance policy or that would void any warranty. You will not take or allow others to take the Vehicle outside the United States without our prior written permission.

**27. FINES AND PENALTIES.** You will pay when due any fine, penalty, traffic ticket, parking ticket, or court costs issued in connection with the Vehicle's use (all referred to as a "**Fine(s)**"). We are not responsible for any Fines. If we receive a citation, court process or other demand for payment of a Fine during the term of this Lease, you authorize us to inform the entity issuing the Fine, its agent, toll road or toll highway company that you are responsible for paying the Fine and to give them your name, driver license number, contact information, and a copy of this Lease and any related information. Colorado: Pursuant to C.R.S. § 43-3-302(7)(b)(II), you are liable for payment of any toll evasion violation incurred on or after taking possession of the Vehicle. At our option, we may pay any Fine that you have not paid on your behalf. You must reimburse us for any such amount immediately upon demand.

**28. INSURANCE.** You must keep the Vehicle insured with the following minimum insurance coverages in addition to any other insurance required by law: (a) $100,000 for bodily injury to one person, $300,000 for bodily injury for any one accident, and $50,000 for property damage; and (b) collision, fire, theft and comprehensive coverage covering the Vehicle's actual value with a deductible of no more than $1,000. Such policies must not exclude or restrict coverage if you were to drive the Vehicle, or when the driver is someone you allow to drive the Vehicle or who you can reasonably foresee may drive the Vehicle. Chase and/or other persons specified by Chase must be listed as loss payee and additional insured. You will not operate the Vehicle if the insurance coverage has lapsed or has been cancelled. The insurance policy must state that we will be given at least 10 days' advance notice of any cancellation, reduction, or other material change in coverage. You may provide the insurance through any insurer reasonably acceptable to us. You will give us written proof of coverage upon our request. You will remain liable to us for any loss we suffer because your insurer denies a claim. You authorize us to settle any claim for loss or damage to the Vehicle, and to collect insurance proceeds, directly with or from your insurer, as well as to endorse your name on and negotiate any insurance check or draft. You will cooperate with us in collecting insurance proceeds, including providing or signing any releases or other documents. You will not settle any insurance claim or accept any settlement payment from your insurer without first obtaining our written permission. If you fail to maintain the required insurance we may, but are not required to, obtain it to protect our interests and you will reimburse us for the insurance premium we pay. (Louisiana Customers: You have the option of furnishing the required insurance either through existing policies of insurance coverage or through any insurance company authorized to transact business in Louisiana.)
**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

# DEFAULT AND LEASE TERMINATION

**29. DEFAULT**

(a) **Events of Default.** You will be in default if: (1) you fail to pay any Monthly Payment or other amount you owe under this Lease when due; (2) you gave any false or misleading information when applying for this Lease; (3) you become insolvent or the subject of a bankruptcy proceeding; (4) you are dissolved (if an entity), die or become incompetent and there is no surviving Lessee; or (5) you break any other promise in this Lease.

(b) **Our Remedies.** If you default, in addition to any other rights we have, we can do one or more of the following at our option and without notifying you, except for any notice required by law: (1) take any reasonable measures to correct the default or to save us from loss, in which case you will reimburse us upon demand for our expenses; (2) terminate this Lease and your rights to possess and use the Vehicle; (3) take possession of the Vehicle by any lawful method or manner; (4) cancel any optional product or service you purchased as part of this Lease and apply any refunds for unearned premiums or charges to amounts you owe under this Lease; (5) or pursue any other remedy at law or in equity.

## LOUISIANA LAW PERMITS REPOSSESSION OF MOTOR VEHICLES UPON DEFAULT WITHOUT FURTHER NOTICE OR JUDICIAL PROCESS. (In Louisiana, default for this purpose means the nonpayment of two consecutive payments on the date due.)

(c) **Default Charges:** In addition to all other amounts you owe under this Lease, including, but not limited to, any liability under Sections 27, 30, 31 or 33, as applicable, you will pay us all of the following, as permitted by law: collection costs; court costs; the reasonable expenses we incur in connection with locating, retaking (or attempting to retake), storing and transporting the Vehicle, the actual costs for selling the Vehicle and preparing it for sale; and, if the Lease is referred to attorneys who are not our salaried employees, reasonable attorneys' fees we incur to enforce this Lease.

**30. EARLY TERMINATION**

(a) **Early Termination Liability.** If you are not in default, you may end this Lease at any time before the end of the Lease Term by returning the Vehicle to a place we specify. We may end this Lease at any time before the end of the Lease Term if you default. If you or we end this Lease before the beginning of the final Monthly Period (defined below) and the Vehicle is not a Total Loss, then we will assess an Early Termination Charge equal to the Adjusted Lease Balance minus the Vehicle's Fair Market Value. For a Monthly Payment Lease, if you have returned the Vehicle as required or we have recovered the Vehicle, then the Early Termination Charge will not exceed the sum of all remaining Monthly Payments that would otherwise have been due from the early termination date to the Maturity Date and any End-of-Term Liability under Section 33. Your total early termination liability will equal this Early Termination Charge plus any other amounts that have become due and are unpaid at termination (including, for a Monthly Payment Lease, any unpaid Monthly Payments due before termination), less any credits to your account. We will credit your account for any remaining Refundable Security Deposit (see Sections 9(d) and 38) and any refunds we may receive from the cancellation of any Optional Insurance or Other Products (see Section 20). For a Single Payment Lease, we will credit your account for any portion of the Single Payment that is not allocated to the rent charge earned or Depreciation when calculating the Adjusted Lease Balance. Additionally, for a Single Payment Lease, your early termination liability under this Section will not exceed the amount of any End-of-Term Liability under Section 33 after applying any credits for any remaining Refundable Security Deposit and any refunds we receive from the cancellation of any Optional Insurance or Other Products. If any of these credits result in a negative early termination liability, then the excess credits will be refunded to you. If the Vehicle is a Total Loss, your early termination liability will be determined under Sections 28 and 31 rather than under this Section. Further, if you are in default and the Vehicle has not been returned as required or recovered by us, then we will use the amount that you would have owed if you had exercised your purchase option under Section 32, including the purchase option fee, as the Adjusted Lease Balance when calculating the Early Termination Charge. (If you pay all that you owe, including this amount, then we will sell the Vehicle to you under Section 32.)

Lessee Initials Here _____  Co-Lessee Initials Here _____

FORM NO. CAFL-MASTER-LZR/E (REV. 6/19)  Page 4 of 6  © 2019 JPMorgan Chase Bank, N.A. Member FDIC

This is not the Authoritative Copy.

(b) **Calculation of the Adjusted Lease Balance.**

(1) **Calculation of the Monthly Rent Charge:** We earn a portion of the total rent charge (see Section 11(f)) during each month of the Lease Term. To calculate the rent charge earned each month, we divide the Lease Term into monthly periods (each "Monthly Period"). For a Monthly Payment Lease, the first Monthly Period begins on due date of the first Monthly Payment (see Section 6(a)) and subsequent Monthly Periods begin on the due date of each subsequent Monthly Payment. For a Single Payment Lease the first Monthly Period begins on due date of the Single Payment (see Section 6(b)) and subsequent Monthly Periods begin on the same day of each subsequent month. We figure the monthly rent charge earned using the "Constant Yield Method." When figuring the monthly rent charge, monthly rent charges are earned in advance on the first day of each Monthly Period. The rent charge for a Monthly Period equals (i) the constant rate implicit in the Lease multiplied by (ii) the Balance Subject to Rent Charge. In the case of a Monthly Payment Lease, the Balance Subject to Rent Charge in a Monthly Period equals the difference between the Adjusted Capitalized Cost and the sum of (i) all Depreciation for each prior Monthly Period plus (ii) the first Monthly Payment. In the case of a Single Payment Lease, the Balance Subject to Rent Charge is determined by subtracting from Residual Value (see Section 11(d)) the total rent charge scheduled to be earned over the Lease Term (see Section 11(f)) and adding to the difference all rent charges accrued during the preceding Monthly Periods.

(2) **Depreciation:** At the beginning of each Monthly Period, we allocate a portion of the Monthly Funds to the rent charge earned based on the calculation above, and the rest to monthly depreciation and other amortized amounts ("Depreciation"). For a Monthly Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Monthly Payment due. For a Single Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Single Payment divided by the number of monthly periods during the Lease Term. (Your base Monthly or Single Payment is the payment before taxes and other non-amortized amounts (see Section 11(i)).

(3) **Adjusted Lease Balance:** The Adjusted Lease Balance equals the Adjusted Capitalized Cost minus the sum of all accrued monthly Depreciation for each Monthly Period before termination of this Lease and the Monthly Period in which this Lease terminates.

(c) **Fair Market Value.** The Vehicle's Fair Market Value is equal to the net sale price we receive for the Vehicle at a wholesale sale, after deducting from the gross sale price the reasonable expenses we incur to transport, recondition, prepare for sale and sell the Vehicle. Alternatively, if you obtain an appraisal of the Vehicle's wholesale value, at your expense, within 30 days prior to or 10 days after the termination date from a professional independent appraiser agreed to by us, then we will use the appraised value as the Vehicle's Fair Market Value. You and we also may agree in writing to a specific amount for the Vehicle's Fair Market Value. If the Vehicle's Fair Market Value is negative, then we treat the Vehicle's Fair Market Value as zero. Additionally, the Vehicle's Fair Market Value is zero if the Vehicle is not returned to us.

**31. DAMAGE, LOSS OR DANGER TO THE VEHICLE.** You will keep the Vehicle free from any liens, encumbrances or claims, whether voluntary or involuntary. You will not allow the Vehicle (and will not allow others to take actions causing the Vehicle) to become damaged, destroyed, stolen, lost, confiscated, seized, abandoned, or subjected to undue peril. You will notify us and your insurance company within 24 hours if any of these events occurs.

(a) **Liability for Total Loss.** You are responsible for the risk of loss to the Vehicle. If the Vehicle is lost, stolen or damaged beyond repair (a "**Total Loss**"), we will terminate this Lease and, except for amounts waived under Subsection (b) below, you will pay us promptly upon our demand the Adjusted Lease Balance (see Section 30(b)) less credits for (i) any remaining Refundable Security Deposit (Sections 9(d) and 38), (ii) any refunds we receive from the cancellation of any Optional Insurance or Other Products (Section 20), and (iii) any other amounts we receive in payment for the loss, plus any other amounts due under this Lease at termination. For a Single Payment Lease, we also will provide a credit for any portion of the Single Payment that is allocated to the earned monthly rent charge or monthly Depreciation when calculating the Adjusted Lease Balance.

(b) **Conditional Gap Waiver.** If the Vehicle is a Total Loss and you had in place the insurance required by this Lease on the date of loss, we will waive any portion of the Adjusted Lease Balance remaining after we subtract the payment we receive from your insurer for the loss (the "**Gap Amount**"). However, you will still owe us any other amounts due under this Lease plus any amounts your insurer deducts from the Vehicle's actual cash value (for example, for any pre-existing damage) and an amount equal to your insurance deductible when paying the claim. You will be in default and our waiver of the Gap Amount in this Subsection (b) will not apply if you did not have the required insurance in place on the date of loss, you do not otherwise comply with Section 28, or your insurer denies any part of the claim.

**32. PURCHASE OPTION.** You may purchase the Vehicle from us if you are not in default, on an AS-IS, WHERE-IS basis, at any time before or at the end of the Lease Term. To purchase the Vehicle, you must pay the sum of (a) the amount in Section 14 if you purchase the Vehicle at the end of the Lease Term, or the Adjusted Lease Balance plus the purchase option fee in Section 14 if you purchase it before the end of the Lease Term, plus (b) any related official fees, such as sales tax, other taxes, title, tags, license and registration we are required to collect, plus (c) any past due Monthly Payments and any other amounts you owe under this Lease. If you purchase the Vehicle, you will transfer title, re-register the Vehicle and remove and return the license plates (if required by law) within 30 days after purchase or any shorter time required by law. You will sign any additional documents necessary to effect the purchase. We may, at our option, apply any credits or security deposit under this Lease towards the purchase price.

**33. END-OF-TERM LIABILITY.** Your right to use the Vehicle ends on the Maturity Date. If this Lease ends after the last Monthly Payment is due, then we will treat this Lease as if it terminated at the end of the Lease Term and not as if it ended early. However, if the Vehicle is a Total Loss, Section 31 applies. If you do not purchase the Vehicle, at the end of the Lease Term you must return the Vehicle to a place we specify, call us within one business day of returning the Vehicle, and pay us the following end-of-term liability upon our demand: (a) the **Turn-In Fee** disclosed in Section 7; plus (b) any excess mileage charges under Section 13; plus (c) any excess wear and use under Section 34; plus (d) all other amounts due and unpaid under this Lease. You will not keep the Vehicle past the end of the Lease Term unless we agree in writing to extend the Lease Term. For each full or partial Monthly Period after the end of the Lease Term that you have not returned or purchased the Vehicle, you will pay us an additional amount equal to one Monthly Payment (if this is a Single Payment Lease, this monthly amount equals the Advance Single Payment disclosed under Section 6(b) divided by the number of months in the Lease Term) due at the beginning of each Monthly Period, plus a late fee under Section 23 if paid late. Our demand for or acceptance of these payments does not give you the right to keep the Vehicle and does not constitute our agreement to extend the Lease Term. Additionally, if you have not returned or purchased the Vehicle by the Maturity Date as required, then we may declare you in default and charge you the amount that you would have owed if you had exercised your purchase option at the end of the Lease Term (see Section 32) as damages for failure to return the Vehicle. You agree to pay this amount in full, and if you do pay, then we will sell the Vehicle to you under Section 32. We may charge you this amount even if you have made one or more payments to us after the end of the Lease.

**34. EXCESS WEAR AND USE.** You will not subject the Vehicle to more than normal wear and use. If you do not purchase the Vehicle, at the end of the Lease Term you will owe us for excess mileage under Section 13, plus our actual or estimated cost to repair or replace any excess wear and use to the Vehicle, whether or not we make repairs. We will total the costs of items (a) through (f), as follows, and you will owe us any portion of the total in excess of costs expected based on normal wear and use, plus the other amounts set forth at the end of this Section: (a) holes, tears, burns, stains, strong odors or excessively worn areas in the carpet, other interior surfaces or convertible top; (b) scratches, chips, dents, pits, rust, holes or cracks in the wheels or exterior surfaces, windshield or other glass surfaces or metal work; (c) cracked, broken or missing windows, doors, lights, trim, mirrors or antennae; (d) missing, damaged or nonworking mechanical equipment, safety or emissions control equipment, electrical or other parts or accessories; (e) damage to the Vehicle's frame or alignment; (f) damage due to improper, poor quality or incomplete repairs or paint work. You also will remain liable to us for the full cost of any such items resulting from intentional or willful abuse or misuse. In addition, you will owe us the full cost of any missing, damaged or mismatched tires (including spare), any tire that has less than 1/8th inch tread at its lowest point or that is not comparable in quality to the original equipment, and any missing manual or missing or nonworking keys or remote entry devices.

## ADDITIONAL TERMS AND CONDITIONS

**35. INDEMNITY AND NO INTENDED THIRD PARTY BENEFICIARY RIGHTS.** Except as expressly provided in this Lease, you will hold us harmless and indemnify us from any and all claims, liability, loss and expense (including court costs and attorneys' fees) arising from or related to the use, maintenance, condition or possession of the Vehicle, or your failure to perform any obligation in this Lease. This Lease shall not be deemed to confer any rights or remedies upon any person, including but not limited to any rights to enforce these terms, other than by Chase, and its respective successors and assigns.

**36. ODOMETER STATEMENTS.** Whether or not you purchase the Vehicle, when this Lease terminates you must give us a written statement regarding the odometer reading as required by federal and/or state law. Failure to complete this statement upon our request or giving false information may result in fines and/or imprisonment.

**37. ASSIGNMENT.** This is a true lease and you will not own any equity in the Vehicle unless you exercise the purchase option in Section 32. **You will not assign, sublease or transfer any interest in the Vehicle or your rights or obligations under this Lease without getting our written permission first.** After any such assignment, you will remain fully responsible for the performance of this Lease even if we gave you our permission. We may assign or transfer any interest in the Vehicle or our rights and obligations under this Lease without your permission and without notifying you first.

**38. SECURITY DEPOSIT.** You will not earn any interest, benefit, increase or profits on any security deposit. You further agree that we may retain any interest, benefit, increase or profits we earn on your security deposit or other property in which we have a security interest. We may commingle your security deposit with our other funds. We may use your security deposit to pay or satisfy any amount or obligation you fail to pay or satisfy under this Lease. After this Lease terminates, we will refund to you any unused portion of your security deposit.

**39. NOTICES AND ADDRESS CHANGES.** You will mail or deliver any written notices to us in connection with this Lease to the address we provide for the type of notice or, if none, our address for general correspondence. Notices sent to an address we designate for payments only are not effective. If your phone number, or any address we have for you or the Vehicle, changes or is incorrect, you will give us an updated phone number or address within **15 days**. We may send you any notices, bills, correspondence and any refunds owed to you to your address in Section 1, or to any other address you provide us or that we may obtain directly or indirectly from the U. S. Postal Service. We may also send you notices, bills and correspondence electronically (i) at any email address you have provided to us, or (ii) by posting the notice, bill or correspondence on a website and sending you a notice to your email address telling you that the communication has been posted, describing the general purpose of the communication and its location, and providing instructions on how to view it. Delivery of any notice, bill or correspondence in this manner will be effective when we send the email.

This is not the Authoritative Copy.

**40. USE OF TELEPHONE, EMAILS AND TEXT MESSAGES.** In addition to any other lawful method of communication, we and our agents and representatives may contact you regarding the origination, servicing, and collection of amounts due under this Lease at any telephone number or email address you give us or where we believe we may reach you. You give us and our agents and representatives permission to use automatic telephone dialing systems to call you, send you text messages or leave you artificial or prerecorded voice messages, at any telephone number you give us, including a telephone number for a cellular phone or mobile device or any number we obtain for you from another source. In addition, you give us permission to monitor or record telephone calls between you and us regarding this Lease.

**41. CONSUMER REPORTS AND VERIFICATION.** You agree that we may obtain one or more consumer reports (including credit reports) about you from consumer reporting agencies in connection with your application for this Lease and for the purpose of taking collection action, updating, renewing, refinancing, modifying or extending this Lease. You agree that we may also verify your employment, income, assets and debts, and you hereby authorize anyone receiving a copy of this Lease to give us such information.

**NEGATIVE CREDIT REPORTING NOTICE: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**42. ADDITIONAL INFORMATION AND DOCUMENTS.** Promptly upon our reasonable request, you will (a) give us any additional documents and information to allow us to verify any information provided in connection with your application for this Lease, in connection with the Vehicle or your compliance with this Lease, and (b) sign any documents necessary to effect this Lease, including, but not limited to, motor vehicles department forms.

**43. JOINT LESSEES.** If there is more than one Lessee, each Lessee is jointly and severally liable under this Lease. If we release, waive or delay in the enforcement of our rights as to one Lessee, then that will not affect our rights as to the other Lessee. We may, in our sole discretion, pay any refund or other amounts we owe you in connection with this Lease jointly to both Lessees or individually to either Lessee. Also, you agree that notice provided by us to any Lessee is effective notice to all Lessees, including you, except as otherwise required by applicable law. We may also, in our sole discretion, allow one Lessee to exercise any right under this Lease with respect to the Vehicle without the other Lessee's consent or participation and any authorization provided by any Lessee, is effective and binding on you even if you did not provide such authorization.

**44. SECURITY INTEREST.** Except in Colorado, Indiana, Kansas, Oklahoma, Maine, South Carolina, West Virginia, and Wyoming, you grant us an irrevocable security interest in the following to secure performance of your obligations under this Lease: (a) in payment under any insurance policy or from any other party in payment for loss or damage to the Vehicle; (b) in the proceeds of any mechanical breakdown protection contract, service contract, or other optional product or service purchased as part of this Lease; and (c) any refunds of unearned premiums or charges for any of the foregoing. You authorize us to apply any amounts we receive to your obligations under this Lease. You will not earn any interest, benefit, increase or profits on or in any property in which we have a security interest.

**45. ASSIGNMENT OF UNEARNED PREMIUMS AND CHARGES.** You assign to us any refunds of unearned premiums or charges for any insurance or optional products or services purchased as part of this Lease.

**46. LIMITED POWER OF ATTORNEY.** You hereby appoint us or our agent as your attorney-in-fact to do the following: (a) settle any insurance claim related to the Vehicle, (b) endorse your name on any check or draft we receive from your insurer or from any other party for damage to or loss of the Vehicle, and (c) to sign your name to any title, registration or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable as long as we have an interest in the Vehicle.

**47. ELECTRONIC EXECUTION, AUTHORITATIVE COPY AND CONVERSION TO PAPER.** This Lease and any other associated documents may be signed on paper, or signed electronically as an electronic record. (a) If this Lease is signed electronically as an electronic record, then at our option an authoritative electronic copy of this Lease ("Authoritative Copy") may be converted to paper and marked as the original by us (the "Paper Original"). Unless and until we create a Paper Original, the Authoritative Copy of this Lease: (i) will reside in a document management system designated by us or our custodian for the storage of authoritative copies of electronic records, and (ii) is held in the ordinary course of business. (b) In the event we convert the Authoritative Copy to a Paper Original, you acknowledge and agree that: (i) the electronic signing of this Lease also constitutes issuance and, delivery of the Paper Original, (ii) the electronic signature(s) associated with this Lease, when affixed to the Paper Original, constitutes a legally valid and binding signature on the Paper Original, and (iii) your obligations will be evidenced by the Paper Original after the conversion.

**48. GOVERNING LAW.** Except as otherwise set forth in this Lease, this Lease will be governed by the laws of the state of the Lessor's address (as set forth in Section 1 of this Lease) and federal law, including any applicable federal law relating to the use of electronic records and signatures.

**49. GENERAL.** If we waive or delay in enforcing any of our rights, it will not be considered a waiver of any of our other rights or later rights. You acknowledge that we have not given you any tax information or advice about this Lease and that we are not passing to you any tax credit or benefit on the Vehicle. Except as otherwise set forth in the Arbitration Provision, if any provision of this Lease is determined to be unenforceable, that provision will be deemed modified as necessary to comply with law and to make the provision enforceable, and all remaining provisions of this Lease will remain in full effect. We may, at our option, apply any refunds we owe you or credits you have under this Lease to reduce any amounts you owe us under this Lease. We are not required to make any credit or refund to you in connection with this Lease if the amount of the credit or refund is less than $1.00.

---

**ARBITRATION PROVISION: PLEASE REVIEW AS THIS AFFECTS YOUR LEGAL RIGHTS**

You and we agree that upon the election of either of us, any claims or disputes relating in any way to your lease account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims." However, claims relating to the scope, enforceability or validity of this agreement to arbitrate are for a court of competent jurisdiction to decide. The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis. Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Arbitration procedures are generally simpler than court rules, and discovery can be more limited. Certain rights that you have in court may not be available in arbitration.

YOU AND WE AGREE NOT TO: 1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING; 2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE; 3) BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR 4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The single arbitrator will conduct the arbitration and decide the Claim in accordance with all applicable substantive law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any arbitration decision and award will be final and binding on the named parties and enforceable by any court having jurisdiction.

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law.

Rules and forms may be obtained from, and Claims may be filed with JAMS (800.352.5267 or jamsadr.com) or the AAA (800.778.7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

---

This is not the Authoritative Copy.

Lessee Initials Here _____   Co-Lessee Initials Here _____

FORM NO. CAFL-MASTER-LZR/E (REV. 6/19)        Page 6 of 6        © 2019 JPMorgan Chase Bank, N.A. Member FDIC

# EXHIBIT C

**J.D. POWER**

7/31/2024

J.D. POWER Used Cars/Trucks

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | 2021 Land Rover Discovery Utility 4D S R-Dynamic 4WD 2.0L I4 Turbo |
| **Region:** | New England |
| **Period:** | July 31, 2024 |
| **VIN:** | SALRT2RX6M2449356 |
| **Mileage:** | 52,500 |
| **Base MSRP:** | $56,400 |
| **Typically Equipped MSRP:** | $62,800 |
| **Weight:** | 4,865 |



## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly** | | | | |
| **Trade-In** | | | | |
| Rough | $27,400 | N/A | N/A | **$27,400** |
| Average | $29,700 | N/A | N/A | **$29,700** |
| Clean | $31,625 | N/A | N/A | **$31,625** |
| Clean Loan | $28,475 | N/A | N/A | **$28,475** |
| Clean Retail | $35,225 | N/A | N/A | **$35,225** |